IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| USANA HEALTH SCIENCES, INC., a Utah corporation,<br><br>           Plaintiff,<br><br><br><br>vs.<br><br><br>BARRY MINKOW, a citizen of California; FRAUD DISCOVERY INSTITUTE, INC., a California corporation; JOHN DOES 1-100,<br><br>           Defendants. | **ORDER AND<br>MEMORANDUM DECISION**<br><br><br><br><br>Case No. 2:07-cv-159 TC |

Plaintiff USANA Health Sciences, Inc., ("USANA") filed this action against Defendants Barry Minkow and Fraud Discovery Institute, Inc., (collectively, "Defendants") alleging that Defendants engaged in a scheme of illegal market manipulation.  USANA asserts four causes of action under California state law and one claim under federal securities law.

In response, Defendants moved to strike all state law causes of action under California's anti-SLAPP (strategic lawsuit against public participation) statute, and moved to dismiss the amended complaint for failure to state a claim upon which relief can be granted.

For the reasons stated more fully below, the court strikes the four state law causes of action.   Because USANA has standing to seek an injunction under federal securities law, the court does not dismiss the claim under Rule 10(b)(5) of the 1934 Securities Exchange Act.  15

U.S.C. § 78j; 17 C.F.R. § 240.10b-5.

Additionally, USANA has objected to an order by Magistrate Judge Alba granting expansive expedited discovery to Defendants.  Through this order and memorandum decision, the court has shifted the focus of the litigation, and accordingly, vacates Judge Alba's expedited discovery order.

BACKGROUND[1]

Defendant Fraud Discovery Institute, ("FDI") co-founded by Mr. Minkow, authored a lengthy and uncomplimentary report about USANA's products and business practices ("the report").  On February 20, 2007, FDI sent the report to the Securities and Exchange Commission, the Federal Bureau of Investigation, and the Internal Revenue Service.  On February 21, 2007, Mr. Minkow wrote a letter to those agencies explaining that he had short sold some shares in USANA.  (See Letter from B. Minkow (Feb. 21, 2007), Original Compl. Ex. 2 at 2.)

FDI subsequently published the report on its website and issued a press release on March 15, 2007, highlighting several key findings from the report.  Since that time, Defendants have apparently continued to make statements about USANA, through "follow-up reports" (Am. Compl. ¶ 37), banner advertisements on the internet, and YouTube videos.[2]

---

[1]The court discusses only those facts necessary to resolve the issues presented, taken from the parties' pleadings.

[2]Although USANA provided no evidence of these subsequent public statements, other than allegations in the amended complaint, Defendants do not dispute that the statements were made.

ANALYSIS

I.      **Motion to Strike State Claims**[3]

Defendants have moved to strike the amended complaint under California's anti-SLAPP

statute, "on the grounds that all of these claims for relief alleged arise from statements made by

FDI and Minkow in exercise of their constitutional free speech rights, and USANA cannot meet

its burden of demonstrating a probability of prevailing on these claims."  (Defs.' Mot. to Strike 1-

2.)[4]

The anti-SLAPP statute "is designed to protect the defendant from having to litigate

meritless claims aimed at chilling First Amendment expression . . . ."  Batzel v. Smith, 333 F.3d

1018, 1025 (9th Cir. 2003).  "[A] defendant's rights under the anti-SLAPP statute are in the

nature of immunity" because "California lawmakers wanted to protect speakers from the trial

itself rather than merely from liability."  Id.  "Therefore, the California legislature looked for

procedural and substantive remedies for the prompt exposure, dismissal, and discouragement of

SLAPP suits."  United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc., 190 F.3d

963, 971 (9th Cir. 1999) (citing Wilcox v. Super. Ct., 27 Cal. App. 4th 809, 817 (Cal. Ct. App.

---

[3]Under California law, the motion to strike should be filed within sixty days of serving the complaint. Consequently, USANA urges the court to disregard the motion because it was filed on September 26, 2007, and the amended complaint was served on July 12, 2007.
          But Magistrate Judge Alba ordered that all exhibits must accompany service of the amended complaint—and that service did not occur until August 24, 2007—so the court finds that the motion is timely.
          But even if the motion had been filed more than sixty days after service, the court would exercise its discretion to consider the motion on its merits.  See Cal. Civ. Proc. Code § 425.16 (2005) ("The special motion **may** be filed within 60 days of the service of the complaint or, **in the court's discretion**, at any later time upon terms it deems proper") (emphasis added).

[4]Because the parties agree that the anti-SLAPP law applies only to state law claims, the present motion does not apply to the fourth claim for relief, which alleges violations of federal securities laws.

1994)).  "The hallmark of a SLAPP suit is that it lacks merit, and is brought with the goals of obtaining an economic advantage over a citizen party by increasing the cost of litigation to the point that the citizen party's case will be weakened or abandoned, and of deterring future litigation."  Id. at 970-71.

The *Erie* Doctrine Does Not Bar Application of the Anti-SLAPP Statute

USANA first contends that under the doctrine of Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938), the court should not apply the anti-SLAPP statute.  USANA argues that the anti-SLAPP statute "is a state procedural rule, in conflict with the Federal Rules of Civil Procedure," so "it will not apply to a case, such as this, brought pursuant to diversity jurisdiction."  (Pl.'s Mem. Opp'n Mot. to Strike 9.)

"As a federal court sitting in diversity, the doctrine of Erie dictates that state substantive law should apply, but that federal procedural rules will nevertheless control the analysis."  Aspen Orthopaedics & Sports Med., LLC v. Aspen Valley Hosp. Dist., 353 F.3d 832, 844 (10th Cir. 2003) (citations omitted).  "Procedural state laws are not used in federal court if to do so would result in a 'direct collision' with a Federal Rule of Civil Procedure."  Metabolife Int'l Inc. v. Wornick, 264 F.3d 832, 845 (9th Cir. 2001) (citing Walker v. Armco Steel Corp., 446 U.S. 740, 749-50 (1980).  But if there is no collision, "the court must make the 'typical, relatively unguided Erie Choice.'"  Id. (citing Hanna v. Plummer, 380 U.S. 460, 471 (1965) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)).

The first question, then, is whether there is a "direct collision" between the Federal Rules of Civil Procedure and the California anti-SLAPP statute.  USANA contends  that "the

subsections facilitating early resolution of SLAPP suits, directly conflict with Federal Rule of Civil Procedure 56 when the anti-SLAPP motion is directed at the <u>evidentiary support</u> for the plaintiffs claim."  (Pl.'s Suppl. Resp. Opp'n Defs.' Mot. Strike 14-15.)   But, as explained by the Central District of California, the anti-SLAPP law does not conflict with the Federal Rules of Civil Procedure because "[b]oth statutes confer discretion on the trial court to permit discovery in the face of a dispositive motion, in the appropriate case and **upon a proper showing**."  <u>New.Net, Inc. v. Lavasoft</u>, 356 F. Supp. 2d 1090, 1101 (C.D. Cal. 2004) (emphasis added).  Rule 56(f) offers the court discretion to "order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken . . . ."  Fed. R. Civ. P. 56(f).  Similarly, the anti-SLAPP statute expressly directs that the "court, on noticed motion and for good cause shown, may order that specified discovery be conducted . . . ."  Cal. Civ. Proc. Code § 425.16(g) (2005).

Significantly, USANA has not filed any affidavits in support of its contention that it needs more discovery.  Rule 56(f) requires more than a bare assertion that a party needs additional discovery.  The Tenth Circuit has explained that a "party seeking to defer a ruling on summary judgment under Rule 56(f) must '**file an affidavit** that explain[s] why facts precluding summary judgment cannot be presented.  This includes identifying the probable facts not available and what steps have been taken to obtain these facts.'"  <u>Libertarian Party of N.M. v. Herrera</u>, 506 F.3d 1303, 1308 (10th Cir. 2007) (quoting <u>Trask v. Franco</u>, 446 F.3d 1036, 1042 (10th Cir. 2006)) (emphasis added).  The court stated that a "party may not invoke Rule 56(f) by simply stating that discovery is incomplete but must '**state with specificity** how the additional material will rebut the summary judgment motion.'"  <u>Id.</u> at 1308-09 (quoting <u>Ben Ezra,</u>

<u>Weinstein & Co. v. Am. Online Inc.</u>, 206 F.3d 980, 987 (10th Cir. 2000)) (emphasis added).

Similarly, the court in <u>Rogers v. Home Shopping Network, Inc.</u>, 57 F. Supp. 2d 973 (C.D. Cal.

1999)—the primary case USANA uses to support its argument—denied the motion to strike only

after the plaintiff had "identified specific discovery which she must obtain before being able to

oppose the special motion." <u>Id.</u> at 985.

USANA has already had extensive discovery in this matter.  According to Defendants,

"USANA possesses Defendants' entire file regarding the USANA investigation and report.

USANA has all of Defendants' e-mails referring or relating to USANA.  USANA also has

Minkow's entire securities trading history and brokerage statements from the relevant period."

(Defs.' Suppl. Reply Pl.'s Suppl. Resp. Opp'n Defs.' Special Mot. Strike 3.)   And USANA has

already taken Mr. Minkow's deposition.

Based on the above, the court concludes that in this case, there is not a direct collision

between the federal rules and the California statute.

Because there is no direct collision, the court must next look to the "twin aims of the Erie

rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws"

in deciding whether the anti-SLAPP statute can apply here.   <u>Hanna v. Plumer</u>, 380 U.S. 460, 468

(1965).   In reaching its conclusion that application of the California anti-SLAPP statute did not

violate the <u>Erie</u> doctrine, the court in <u>Lockheed Missiles & Space Co.</u>, stated:

> Plainly, if the anti-SLAPP provisions are held not to apply in federal
> court, a litigant interested in bringing meritless SLAPP claims would
> have a significant incentive to shop for a federal forum.  Conversely,
> a litigant otherwise entitled to the protections of the Anti-SLAPP statute would
> find considerable disadvantage in a federal proceeding.  This outcome appears to
> run squarely against the "twin aims" of the <u>Erie</u> doctrine.

190 F.3d at 973.

Finally, USANA has not identified any federal interests that would suffer if the anti-SLAPP statute were applied here.  In contrast, California has significant state interests furthered by the anti-SLAPP statutes.  Id.; (See Wilcox v. Super. Ct., 27 Cal. App. 4th 809 (1994) (containing a thorough discussion of the history and purpose of the Anti-SLAPP statute.))

Accordingly, the court concludes that Defendants can bring a motion to strike under the California anti-SLAPP statute in this lawsuit.

The Motion to Strike

Motions to strike under California's anti-SLAPP statute[5] are subjected to a two-part analysis: (1) the movant has the burden of making a prima facie showing that the conduct was done in furtherance of constitutionally protected conduct; and then (2) if the movant satisfies this first step, the burden shifts to a plaintiff to show a probability of prevailing on the claims.  Flatley v. Mauro, 139 P.3d 2, 11 (Cal.2006) (internal citations omitted).

To make a prima facie case a "defendant does not have to establish its actions are constitutionally protected under the First Amendment."  Id. (quoting Paul for Council v. Hanyecz, 85 Cal. App. 4th 1356, 1365 (Cal. Ct. App. 2001)).  Instead, "the critical consideration is whether the cause of action is based on the defendant's protected free speech or petitioning activity."  Navellier v. Sletten, 52 P.3d 703, 709 (Cal. 2002).  The "'focus is not on the form of the plaintiff's cause of action but, rather, the defendant's activity that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.'"

---

[5]There is no dispute that California law controls the state law claims in this case.  (See Defs.' Mem. Supp. Mot. to Strike, at 3 n.2.)

Birkner v. Lam, 67 Cal. Rptr. 3d 190, 194 (Cal. Ct. App. 2007) (quoting Navellier, 52 P.3d at 711).

USANA argues that the conduct of Defendants, as described in the amended complaint, is not the type of conduct protected by the anti-SLAPP statute.  Specifically, USANA maintains that the case centers on illegal market manipulation, not the Defendants' statements made in the report and after.

But the allegations in the amended complaint do not support USANA's argument.  In fact, most of the allegations arise from Defendants' "public relations campaign," in which Defendants made disparaging remarks about USANA's products and business strategy.  (See Am. Compl. ¶¶ 1, 25-48.)  Because the manipulation, as described in the amended complaint, is clearly based on the report and Defendants' statements about USANA, the basis of the lawsuit is the report and Defendants' statements about USANA.  (See id. ¶¶ 5, 32, 38.)

What's more, USANA's own pleadings in response to Defendants' motions leave no doubt that the essence of USANA's claims centers on Defendants' statements.  In its opposition to Defendants' motion to dismiss, USANA contended that it "is not alleging any stock transaction between the parties to this matter.  Instead, USANA is alleging that the reports issued by the Defendants were false, deceptive, and misleading . . . ."  (Pl.'s Resp. Opp'n Defs.' Mot. Dismiss 6-7); see also id. at 3 (the "first amended complaint, alleg[es] market manipulation focusing on a naked short selling scheme accomplished by the dissemination of false, deceptive, and misleading statements regarding USANA's products and business model"); id. at 6 ("The False, Deceptive, And Misleading Statements Made By The Defendants Violate California's

Unfair Competition Law"); id. at 9 ("USANA's claim arises from the false, deceptive and misleading reports prepared and disseminated by the Defendants, as they contribute to the larger overarching scheme to manipulate the stock market.").   Also, the original complaint filed by USANA asserted only causes of action arising out of Defendants' statements: defamation and business disparagement.

USANA also argues that Defendants' statements were false and do not merit constitutional protection because the anti-SLAPP statute "cannot be invoked by a defendant whose assertedly protected activity is illegal as a matter of law . . . ." Flatley, 139 P.3d at 13. But USANA's arguments, by themselves, are not sufficient.  In contrast to the situation here, the defendants in Flatley were not disputing that their conduct–money laundering– was illegal. When "a factual dispute exists about the legitimacy of the defendant's conduct, it cannot be resolved within the first step but **must be raised by the plaintiff in connection with the plaintiff's burden** to show a probability of prevailing on the merits." Id. at 12 (emphasis added).[6]

Here, Defendants do not concede the illegality of their conduct and any illegality is not shown by the evidence.  Accordingly, the court concludes that the Defendants have met their

---

[6]This explanation of the law is consistent with Bulletin Displays, LLC v. Regency Outdoor Advertising, Inc., 448 F. Supp. 2d 1172 (C.D. Cal. 2006), the case USANA emphasized during oral argument.  When the defendants in Bulletin Displays denied illegality, the court required the plaintiff to produce evidence of illegality under the second step of the anti-SLAPP analysis.  Id. at 1184 ("Where the parties to an anti-SLAPP motion dispute the legality of the defendant's actions, and the plaintiff cannot establish as a matter of law that the actions were illegal, 'then the claimed illegitimacy of the defendant's acts is an issue which the plaintiff must raise and support in the context of the [step two] discharge of the plaintiff's burden to provide a prima facie showing of the merits of the plaintiff's case.'" (quoting Paul for Council, 85 Cal. App. 4th at 1367)).

initial burden under the anti-SLAPP statute. [7]

### Probability of Prevailing

After Defendants have made a threshold showing that Plaintiff's action is one arising

from statutorily protected activity, USANA can defeat the anti-SLAPP motion by establishing a

probability of prevailing on its claim.  In this step, a motion to strike "operates like a demurrer or

motion for summary judgment in 'reverse.' . . .  [T]he motion requires the plaintiff to

demonstrate that he possesses a legally sufficient claim which is 'substantiated,' that is,

supported by competent, admissible evidence."  Coll. Hosp. Inc. v. Super. Ct., 882 P.2d 894, 903

(Cal. 1994).

USANA must show "there is a reasonable probability [it] will prevail on the merits at

trial" by "show[ing] both that the claim is legally sufficient and there is admissible evidence that,

if credited, would be sufficient to sustain a favorable judgment."  McGarry v. Univ. of San

Diego, 64 Cal. Rptr. 3d 467, 475 (Cal. Ct. App. 2007); see also Overstock.com, Inc. v. Gradient

Analytics, Inc., 61 Cal. Rptr. 3d 29, 38 (Cal. Ct. App. 2007) ("[A] plaintiff opposing an

anti-SLAPP motion cannot rely on allegations in the complaint, but must set forth evidence that

would be admissible at trial").  Courts do "not weigh credibility, . . . [or] evaluate the weight of

the evidence," but must "accept as true all evidence favorable to the plaintiff and assess the

---

[7]USANA also argues that the anti-SLAPP law is rendered inapplicable in this case based on § 425.17.  To
the extent USANA maintains this argument, the court agrees with the reasoning of the court in New.Net, Inc. v.
Lavasoft, 356 F. Supp. 2d 1090 (C. D. Cal. 2004), which explained, "[i]n order to satisfy the required conditions of
section 425.17(c), Plaintiff must also show, pursuant to section 425.17(c)(1), that Defendant is making statements
about its own product or a competitor's business operations, goods or services."  Id. at 1104.  But "section 425.17
requires that the parties be competitors."  Id.
    In this case, there is no evidence that USANA competes with Defendant, and Defendants' statements were
not about Defendants' products.

defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law."
Overstock.com, 61 Cal. Rptr. 3d at 38.  The court "should grant the motion if, as a matter of law,
the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish
evidentiary support for the claim."  Wilson v. Parker, Covert & Chidester, 50 P.3d 733, 739 (Cal.
2002) (citing Paul for Council, 85 Cal. App. 4th at 1365).

With these standards in mind, the court considers each of the four state law causes of
action which are subject to Defendants' motion to strike.

(a)      Violation of California's Unfair Competition Law

 To prevail on its claim under the  California Business and Professions Code § 17200,
California's unfair competition and false advertising law, USANA "need only show that
'members of the public are likely to be deceived.'"  Cairns v. Franklin Mint Co., 24 F. Supp. 2d
1013, 1037 (C.D. Cal. 1998) (quoting Freeman v. Time, Inc., 68 F.3d 285, 289 (9th Cir.1995)).
Courts have explained that "[a]n 'unfair' practice . . . is one 'whose harm to the victim outweighs
its benefits.'"  Day v. AT & T Corp., 74 Cal. Rptr. 2d 55, 59 (Cal. Ct. App. 1998) (quoting
Saunders v. Super. Ct., 33 Cal. Rptr. 2d 438, 441 (Cal. Ct. App. 1994)).

USANA emphasizes that "Defendants knowingly released false and misleading
reports . . . in an effort to manipulate USANA's stock price."  (Pl.'s Resp. Opp'n Defs.' Mot.
Dismiss 7.)  In support of its contentions, USANA points to the technical inaccuracy of a few
statements.  For example, USANA notes that the report states that an independent lab "'found
zero amounts of N-Acetyl L-Cysteine.'"  (Pl.'s Suppl. Resp. Opp'n Mot. Strike 4) (quoting
Compl. Ex. 1 at 84).  Defendants attached the lab report as addendum 5 to the report.  USANA

11

argues that this statement gives rise to a claim of unfair competition because, in fact, "the lab

report states that N-Acetyl L-Cysteine was 'Not Detected.'"  (<u>Id.</u>) (quoting Original Compl. Ex. 1

Addendum 5 at 11).  Without specific evidence to explain why this misstatement was material

and could have deceived the public—particularly when Defendants attached the lab report to

their report—the court has no basis to find that the statement establishes a violation of

California's unfair competition law.

   Similarly, USANA emphasizes that the report compares the antioxidants of a <u>serving</u> of

grape juice to a <u>serving</u> of USANA's TenX bar.  USANA declares—without any evidentiary

support—that this is misleading because "the only meaningful way to compare [differing foods]

is gram-for-gram . . . ."  (Pl.'s Suppl. Resp. Opp'n Defs.' Mot.  Strike 7.)  But this assertion does

not establish that the report is false.  On the contrary, as USANA states in its brief, Defendants'

report explains that it is not comparing the products gram-for-gram, stating that the "'test results

showed TENX is just over 2 times stronger than **8 ounces of grape juice** . . . .'"  (<u>Id.</u> at 6)

(quoting Compl. Ex. 1 at 12 n.32) (emphasis added).  USANA's remaining assertions of

Defendants' inaccuracies suffer from similar problems; they are hyper-technical statements

representing differing interpretations of data, with no evidence tending to show how the

statement was material.

   And the amended complaint undermines USANA's position that the alleged

misstatements caused the price of  USANA's stock to plummet.  For example, USANA alleges

"[s]ome analysts believed that USANA's growth could not be sustained, and as a result, USANA

was viewed as a potentially lucrative target for short sellers."  (Am. Compl. ¶ 29.)  USANA

further alleges that "[s]ome of the sudden price drops in USANA's stock have occurred in

conjunction with the publication of a USANA report or other elements of the public relations

campaign, but **took place faster than any possible market reaction** . . . ."  (Am. Compl. ¶ 43)

(emphasis added).  What's more, USANA declared in its opposition to the motion to dismiss,

"[t]here was simply no way the market could obtain and digest an internet posting, and convert

that information into a sharp stock price decline so quickly."  (Pl.'s Resp. Opp'n Defs.' Mot.

Dismiss 2.)  These arguments undermine USANA's contentions that Defendants' statements are

the reasons behind the decline in USANA's stock prices.

Because USANA provides no evidence to illustrate why the purported misstatements

should create liability under the unfair competition law, USANA does not satisfy its burden of

showing a probability of success for its claim of unfair competition and the court grants

Defendants' motion to strike this cause of action.

(b)     *Violation of California's Corporations Code*

Similarly, USANA has offered no evidence to support its claim under § 25400 of the

California Corporation Code, the second claim for relief.  This provision of the statute outlaws

engaging in "a series of transactions in any security creating actual or apparent active trading . . .

for the purpose of inducing the purchase or sale of such security by others."  Cal. Corp. Code §

25400(b) (2006).  Put another way, this statute make it  "unlawful . . . to make false statements or

engage in specified fraudulent transactions which affect the market for a security when done for

the purpose of inducing purchase or sale of the security or raising or depressing the price of the

security."  Diamond Multimedia Sys., Inc. v. Super. Ct., 968 P.2d 539, 541 (Cal. 1999).

Assuming—without deciding—that USANA has standing to bring this cause of action,[8] USANA has failed to produce evidence to support its claim.  Although the amended complaint alleges that "Defendants . . . create[d] phantom shares in the market [to] mislead USANA shareholders and depress the market price of USANA shares" (Am. Compl. ¶ 73), and the amended complaint alleges that Defendants created these phantom shares by naked short selling USANA's stock (see id. ¶¶ 16-24), USANA provided no evidence to support these claims.

Mr. Minkow, on the other hand, testified in an affidavit which expressly refuted these allegations, stating that he "never 'naked short sold' USANA's stock." (Defs.' Mem. Supp. Defs.' Special Mot. Strike Ex. A  ¶ 10.)  Although Mr. Minkow "took short positions in USANA stock" based on his conclusions about the company's prospects (id. ¶ 9), he disclosed this fact to the SEC, FBI, and IRS. (Id. ¶ 13.)

Consequently, the evidence now indicates only that Defendants engaged in the lawful trading of securities.  Because USANA did not meet its burden, the court strikes the second claim for relief under California's anti-SLAPP statute.

(c)     *Intentional Interference with Economic Relations*

Under California law, a plaintiff must "show defendants engaged in conduct that was wrongful by some legal measure other than the fact of the interference itself."  Contemporary Servs. Corp. v. Staff Pro Inc., 61 Cal. Rptr. 3d 434, 449 (Cal. Ct. App. 2007) (citing Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1153-54 (Cal. 2003)).   Although

---

[8]Defendants argue that USANA does not have standing for this claim because "USANA fails to state in its Complaint that it was a buyer or seller of the securities that were allegedly manipulated by Defendants."  (Defs.' Mem. Supp. Mot. to Dismiss 12.)

USANA alleges that "Defendants have wrongfully and intentionally acted to interfere with and destroy or harm USANA's existing and prospective business relationships" (Am. Compl. ¶ 80), USANA submitted no evidence of Defendants' wrongful conduct or any evidence that Defendants' wrongful conduct harmed USANA's business relationships.[9]  Because USANA failed to meet its burden, the court strikes the third claim for relief.

> (d)      *Tortious Exposure to Litigation*

Finally, USANA has failed to provide evidence to support the fifth claim for relief, that "Defendants' intentional and tortious conduct has required USANA to act in the protection of his [sic] interests by defending legal actions filed by third parties . . . ."  (Am. Compl. ¶ 92.)

California allows recovery of litigation costs by a "person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person . . . ."  <u>Prentice v. N. Am. Title Guar. Corp., Alameda Div.</u>, 381 P.2d 645, 647 (Cal. 1963).  But USANA has offered no evidence tending to show that Defendants engaged in tortious conduct or that this conduct required USANA to incur litigation costs.  Without any evidence to support the claim, USANA has failed to meet its burden, and the court strikes the fifth claim for relief.

Ultimately, under California's anti-SLAPP statute, the court strikes the first, second, third, and fifth claims for relief from the amended complaint.

---

[9]In addition, California courts appear to bar the tort for interference with hypothetical or undefined relationships.  <u>See</u> <u>Silicon Knights, Inc. v. Crystal Dynamics, Inc.</u>, 983 F. Supp. 1303, 1311 (N.D. Cal. 1997) ("[T]he requirement that the plaintiff plead and prove that a business relationship contained the 'probability of future economic benefit' to the plaintiff precluded application of the tort to 'hypothetical relationships' not developed at the time of the allegedly tortious acts.").  In the absence of any evidence of interference with specific relationships, the court cannot find that Defendants' statements can give rise to a tortious interference with economic advantage claim.

**II.**     **Motion to Dismiss the Claim for an Alleged Violation of Federal Securities Law**

Defendants have moved to dismiss USANA's fourth claim for relief, in which USANA

claims that Defendants violated § 10b-5.  USANA contends that as the target company, "it is in

the best position to bring a Rule 10b-5 claim for injunctive relief to stop Defendants from further

manipulating USANA stock.  (Am. Compl. ¶ 86.)  Defendants argue that a "private action under

10b-5 must be brought by a purchaser or seller of securities, which USANA is not."  (Def.s' Mot.

Dismiss ¶ 8.)  USANA counters that it has standing to seek injunctive relief under an exception

to the purchaser or seller of securities rule.  (Am. Compl. ¶ 85.)  Defendants respond that the

exception to the purchaser or seller of securities rule relied upon by USANA "has not been viable

for thirty years."  (Mem. Supp. Defs.' Mot. Dismiss 16.)

The Tenth Circuit has determined that "10(b)'s language outlawing deception or

manipulation 'in connection with the purchase or sale of any security' must be construed as

meaning that in a suit for equitable relief any person showing a causal connection between the

fraudulent sale of a security and injury to himself may invoke federal jurisdiction."  Vincent v.

Moench, 473 F.2d 430, 434-35 (10th Cir. 1973) (quoting 17 C.F.R. § 240.10b-5(c)) (internal

quotation omitted).  "The question is whether there is a causal connection between the deceptive

sale and the injury to the plaintiffs."  Vincent, 473 F.2d at 435.

Less than two years after Vincent, the Supreme Court addressed whether "the offerees of

a stock offering . . . may maintain a private cause of action for money damages where they allege

that the offeror has violated the provisions of Rule 10b-5 of the Securities and Exchange

Commission, but where they have neither purchased nor sold any of the offered shares."  Blue

Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 725 (1975) (emphasis added).  The Court held

that a private party must be a purchaser or seller in order to avoid an "endless case-by-case

erosion . . . ."  Id. at 754-55.

      After Blue Chip Stamps, this court addressed whether the exception in Vincent remained.

Equity Oil Co. v. Consol. Oil & Gas, Inc., 596 F. Supp. 507 (D. Utah 1983).  "Prior to Blue Chip

Stamps an injunctive relief exception to the purchaser-seller rule was widely recognized,

including in the Tenth Circuit."  Id. at 514.  In Equity, the court stated that "[i]t is a legitimate

question whether [the Vincent] exception survives the Blue Chip Stamps decision, a question

which the Tenth Circuit has expressly reserved for future determination."  Id. (citing

Westinghouse Credit Corp. v. Bader & Duffy, 627 F.2d 221, 223 (10th Cir. 1980)).  The court

relied on Blue Chip Stamps to deny "standing to issuers under 10b-5 to seek an injunction based

on alleged misstatements or omissions in a Schedule 13D" because such standing "would violate

some of the same policy considerations present in Blue Chip Stamps."  Id.  Those policy

considerations were avoiding "strike suits based on oral testimony" and "the abuse of liberal

federal discovery rules."  Id. (citing Blue Chip Stamps, 421 U.S. at 741-43).

      Here, unlike the plaintiff in Blue Chip Stamps asking for damages, USANA is asking for

injunctive relief.  Because the facts in this case do not fit the facts in Equity and because Vincent

has not been specifically overruled by Blue Chip Stamps or the Tenth Circuit, this court must

next look to Vincent for guidance.  To succeed under Vincent, the plaintiff must show a causal

connection between the fraudulent sale of a security and injury to the plaintiff in order to

maintain standing.  Because the amended complaint alleges that "Defendants made the material

misstatements or omissions in connection with the sale and/or purchase of USANA stock," (Am. Compl. ¶ 89) and that "Plaintiff has suffered damages directly and proximately caused by Defendants [sic] scheme to unlawfully manipulate the USANA stock price," (id. ¶ 90) USANA has pleaded the necessary elements for standing for equitable relief.

Accordingly, dismissal of the 10b-5 claim for injunctive relief is not proper at this stage of the litigation, and the court DENIES Defendants' motion to dismiss this remaining claim.[10]

## III.  **Objection to Magistrate Order**

USANA has objected to Magistrate Judge Alba's order which granted Defendants' request for expedited discovery.  By granting the motion to strike, however, the court has now significantly altered the scope of this litigation.  Consequently, the court finds the expedited discovery order no longer applicable and GRANTS USANA's objection.

The court encourages the parties to reassess their discovery needs in light of this order, and file new discovery requests with Magistrate Judge Alba.

CONCLUSION

For the foregoing reasons, the court GRANTS the Motion to Strike the Amended Complaint (dkt. # 52) for the First, Second, Third, and Fifth Claims for Relief and the court DENIES the Motion to Dismiss (dkt. # 38) for the only claim remaining, the Fourth Claim for Relief.

The court GRANTS USANA's objection to the order granting expedited discovery (dkt. # 97).

---

[10] On the basis of this ruling, the court also DENIES the request to transfer this action pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Southern District of California.

18

SO ORDERED this 3rd day of March, 2008.


BY THE COURT:

TENA CAMPBELL
Chief Judge